1

2

3

4                    UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6                          SAN JOSE DIVISION

7

8    TINA A. GOYTIA,                        Case No.  5:14-cv-04498-EJD

              Plaintiff,

9                                           ORDER GRANTING PLAINTIFF'S
        v.                                  MOTION FOR SUMMARY
10                                          JUDGMENT; DENYING
                                            DEFENDANT'S MOTION FOR
11   NANCY A. BERRYHILL, Acting             SUMMARY JUDGMENT
     Commissioner of Social Security,

12            Defendant.                    Re: Dkt. Nos. 18, 21

13           Plaintiff Tina A. Goytia ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to

14   obtain review of a final decision by the Commissioner of the Social Security Administration[1]

15   denying her claim for Supplemental Security Income ("SSI").  In a Motion for Summary

16   Judgment, Plaintiff seeks an order reversing the decision and awarding benefits, or alternatively,

17   remanding the action to the Commissioner for further administrative proceedings.  Dkt. No. 18.

18   The Commissioner opposes Plaintiff's motion and seeks summary judgment affirming the

19   decision denying benefits.  Dkt. No. 21.

20           Because the record reveals the Commissioner's decision is not supported by substantial

21   evidence, Plaintiff's motion will be granted and the Commissioner's cross-motion will be denied.

22   I.    BACKGROUND

23        A.    Procedural History

24           Plaintiff applied for SSI on September 7, 2012, alleging a disability beginning on April, 1,

25

26   ──────────────────────

27   [1] The current acting Commissioner of Social Security, Nancy A. Berryhill, is automatically
     substituted as defendant in place of her predecessor.  Fed. R. Civ. Proc. 25(d).

28   Case No.: 5:14-cv-04498-EJD
     ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

2012.[2]  Tr., Dkt No. 15, at 165.  Plaintiff's claim was initially denied by the Commissioner on November 27, 2012.  Id. at 103-107.  Plaintiff requested reconsideration of that decision, which was denied by the Commissioner on July 1, 2013.  Id. at 108-114.

Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ"), which occurred before ALJ Betty Roberts Barbeito on May 22, 2014.  Id. at 31-69; 115-117.  Plaintiff, represented by counsel, testified on her own behalf.  Id. at 35-38.  The ALJ also heard testimony from an expert psychiatrist, Dr. Robert McDevitt, and a vocational expert, Thomas Linvill.  Id. at 38-69.  In a written decision dated May 30, 2014, the ALJ ultimately found that Plaintiff was not disabled and had the residual functional capacity to perform "light work" limited to "simple, repetitive tasks characteristic of unskilled work."  Id. at 17-26.

Plaintiff sought administrative review of the ALJ's determination.  Id. at 8-9.  On August 7, 2014, the Appeals Council denied the request for review, and the ALJ's decision became the final decision of the Commissioner.  Id. at 1-6.  Plaintiff then commenced this action, and the instant summary judgement motions followed.

**B.    Plaintiff's Personal, Vocational and Medical History**

According to her testimony before the ALJ, Plaintiff was born on September 10, 1981, and was 32 years old at the time of the hearing.  Id. at 36.  She attended school to the eleventh grade, did not complete a GED, and did not have any vocational training after high school.  Id. at 36-37.  Plaintiff is single and has three children, who were seventeen years old, fourteen years old and twelve years old when she appeared before the ALJ.  Id. at 36.  She was most recently employed as a caretaker of non-verbal and immobile patients in 2010.  Id. at 37.

Plaintiff claims an inability to work due to Post-Traumatic Stress Disorder ("PTSD"), Obsessive-Compulsive Disorder ("OCD"), diabetes mellitus, and obesity.  Id. at 277.  Plaintiff began receiving medical treatment for physical and psychiatric conditions at the Eureka Community Health Center in 2011.  Records obtained from that facility show that on December

---

[2] Plaintiff later amended the alleged disability onset date to September 7, 2012.  Tr. at 13.

Case No.: 5:14-cv-04498-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1   21, 2011, Plaintiff reported "severe anxiety" lasting for "several minutes" which "spontaneously

2   goes away." Id. at 340.  She was diagnosed with diabetes mellitus on or about March 5, 2012, and

3   began checking her blood glucose levels shortly thereafter.  Id. at 337-38.  On April 23, 2012,

4   Plaintiff reported she had "a lot of anxiety" over the diabetes diagnosis, but also reported having

5   anxiety "for years and it is getting worse." Id. at 334.   On May 7, 2012, Plaintiff was "tearful,"

6   said anxiety was "taking over her life," and stated she could not visit her mother.  Id. at 329.

7   Plaintiff also stated she was checking her blood glucose level five times per day.  Id.

8        On May 8, 2012, Plaintiff underwent an initial psychiatric assessment with Dr. David

9   Villasenor.  Id. at 299-303.  Dr. Villasenor diagnosed Plaintiff with "General Anxiety Disorder

10  with agoraphobia and panic, rule out anxiety due to a general medical condition,

11  methamphetamine dependence, in full remission." Id.  He discussed the "three pillars" of anxiety

12  treatment with Plaintiff (psychopharmacology, behavioral measures and psychotherapy), and

13  indicated that Plaintiff was agreeable to all three.  Id.  Dr. Villasenor also prescribed Zoloft for

14  Plaintiff.  Id.

15       Plaintiff also received treatment from Gardner Health Center through December, 2013.

16  Relevant records from that facility show that on July 19, 2012, Plaintiff reported worsening

17  anxiety symptoms, such that she could not go out of the house and experienced panic in public

18  areas.  Id. at 367-69.  She also stated Klonopin was helpful with panic attacks, which were

19  occurring one to two times per week.  Id.  Dr. Michelle Dinh referred Plaintiff for psychiatric

20  treatment.  Id.  On August 13, 2012, Plaintiff's prescription for Zoloft was increased from 25

21  milligrams to 50 milligrams, and though she was checking her blood glucose level four to six

22  times per day, she was advised to check it only once per day.  Id. at 357-59.

23       Plaintiff began psychiatric treatment with Dr. Viet Le on August 30, 2012.  Id. at 390-91.

24  On that date, Dr. Le observed that Plaintiff had "moderate anxiety and panic attack symptoms,"

25  and Plaintiff's prescription for Zoloft was increased to 100 miligrams.  Id.  Dr. Le also prescribed

26  BuSpar and Trazodone.  Id.  On September 27, 2012, Dr. Le reported that Plaintiff "continued to

27

28

Case No.: 5:14-cv-04498-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

struggle with panic attack episodes and agoraphobia behavior." Id. at 391.

On November 30, 2012, Dr. Le reported that Plaintiff "missed her last appointment because of lack of transportation, complicated by panic attack symptom and agoraphobic behavior." Id. at 484.  Plaintiff continued to "struggle with panic attack episodes." Id.  On May 9, 2013, and July 25, 2013, Dr. Le reported that Plaintiff had anxiety throughout the day, and on October 24, 2013, he reported that Plaintiff had "recurred symptoms of depressed mood and anxiety." Id. at 481-83.  On November 21, 2013, Dr. Le reported that Plaintiff "still struggled with anxiety and panic attack symptoms." Id. at 480.

On January 2, 2014, Dr. Le reported that Plaintiff's anxiety symptoms persisted and were complicated by diabetes mellitus.  Id. at 480.  In a Mental Medical Source Statement completed that same date, Dr. Le noted that Plaintiff's psychological conditions and symptoms included depression, anxiety/panic attacks, sleep disturbance, problems interacting with the public, difficulty with concentration, and "OCD symptoms of increased checking of her finger stick blood glucose . . . in stressful situation." Id. at 516-19.  Dr. Le noted that Plaintiff could remember locations and work-like procedures, and could understand and remember short and simple instructions without limitation.  Id.  She had a mild limitation in her ability to carry out short and simple instructions, and moderate limitations in several other areas of sustained concentration and persistence, social interaction, and functional limitation.  Id.  Plaintiff had a marked limitation in her ability to understand, remember and carry out detailed instructions, and her ability to accept instructions and to respond appropriately to criticism from supervisors.  Id.  Dr. Le concluded that Plaintiff's limitations had lasted or were expected to last twelve continuous months, was incapable of low stress jobs, and would likely be absent from work more than four days per month.  Id.

Plaintiff attended a comprehensive psychiatric evaluation with Dr. Maria Antoinette Acenas on June 11, 2013.  Id. at 301-302.  Dr. Acenas diagnosed Plaintiff with generalized anxiety disorder, dysthymia and history of polysubstance abuse.  Id.  She determined that Plaintiff was capable of managing funds, has basic mathematical skills, can perform simple and repetitive tasks,

United States District Court
Northern District of California

4

1    and can accept instructions from supervisors.  Id.  Dr. Acenas also determined that, because

2    Plaintiff's depression was being appropriately treated, she would be able to perform work on a

3    consistent basis, maintain regular attendance and finish a normal work week.  Id.  Dr Acenas also

4    found that Plaintiff could "deal with the usual stress encountered in a competitive workplace."  Id.

5        At the hearing before the ALJ, Plaintiff testified that she is afraid of dying.  Id. at 51.  She

6    has a valid drivers' license but does not drive.  Id. at 53.  She is able to bring her children to

7    school, shop for groceries, attend medical appointments, and attend church and Bible study with

8    assistance from family.  Id. at 51, 56, 57.  However, Plaintiff described panic attacks lasting

9    twenty to forty minutes and issues with incontinence and regular hygiene.  Id. at 55-56, 59.

10   II.    LEGAL STANDARD

11       A.    Standard for Reviewing the ALJ's Decision

12       Pursuant to 42 U.S.C. § 405(g), the district court has authority to review an ALJ decision.

13   The court's jurisdiction, however, is limited to determining whether the denial of benefits is

14   supported by substantial evidence in the administrative record.  Id.  A district court may only

15   reverse the decision if it is not supported by substantial evidence or if the decision was based on

16   legal error.  Id.; Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

17       "Substantial evidence" is more than a scintilla, but less than a preponderance.  Thomas v.

18   Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  This standard requires relevant evidence that a

19   "[r]easonable mind might accept as adequate to support a conclusion."  Vertigan, 260 F.3d at 1049

20   (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).  A court must review the record as a

21   whole and consider adverse as well as supporting evidence.  Robbins v. Soc. Sec. Admin., 466

22   F.3d 880, 882 (9th Cir. 2006).  The court must affirm the ALJ's conclusion so long as it is one of

23   several rational interpretations of the evidence.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir.

24   2005); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).

25       B.    Standard for Determining Disability

26       The Social Security Act defines disability as the "inability to engage in any substantial

27

28   Case No.: 5:14-cv-04498-EJD
     ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

5

1  gainful activity by reason of any medically determinable physical or mental impairment which can

2  be expected to result in death or which has lasted or can be expected to last for a continuous period

3  of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The impairment must also be so

4  severe that a claimant is unable to do previous work, and cannot "engage in any other kind of

5  substantial gainful work which exists in the national economy," given the claimant's age,

6  education, and work experience.  42 U.S.C. § 423(d)(2)(A).

7      "The claimant carries the initial burden of proving a disability."  Ukolov v. Barnhart, 420

8  F.3d 1002, 1004 (9th Cir. 2005); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (observing that

9  the claimant must satisfy the burden on the first four steps of the evaluative process).  If the

10 claimant proves a prima facie case of disability, then the Commissioner has the burden of

11 establishing the claimant can perform "a significant number of other jobs in the national

12 economy."  Thomas, 278 F.3d at 955; Bowen, 482 U.S. at 146 n.5 ("[T]he Secretary bears the

13 burden of proof at step five, which determines whether the claimant is able to perform work

14 available in the national economy.").  "The Commissioner can meet this burden through the

15 testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R.

16 pt. 404, subpt. P, app. 2."  Thomas, 278 F.3d at 955.

17      The ALJ evaluates Social Security disability cases using a five-step evaluation process.  20

18 C.F.R. § 416.920.  The steps require the following analysis:

> (1) The ALJ must first determine whether the claimant is presently engaged in substantially gainful activity.  20 C.F.R. § 416.920(b).  If so, the claimant is not disabled; otherwise the evaluation proceeds to step two.
>
> (2) The ALJ must determine whether the claimant has a severe impairment or combination of impairments.  20 C.F.R. § 416.920(c).  If not, the claimant is not disabled; otherwise the evaluation proceeds to step three.
>
> (3) The ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the requirements of the Listing of Impairments.  20 C.F.R. § 416.920(d).  If so, the claimant is disabled; otherwise the analysis proceeds to step four.

Case No.: 5:14-cv-04498-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1

2   (4) The ALJ must determine the claimant's residual functional capacity despite limitations from the claimant's impairments. 20 C.F.R. § 416.920(e). If the claimant can still perform work that the individual has done in the past, the claimant is not disabled. If the claimant cannot perform the work, the evaluation proceeds to step five. 20 C.F.R. § 416.920(f).

3

4

5   (5) In this step, the Commissioner has the burden of demonstrating that the claimant is not disabled. Considering a claimant's age, education, and vocational background, the Commissioner must show that the claimant can perform some substantial gainful work in the national economy. 20 C.F.R. § 416.920(g).

6

7   **III.   DISCUSSION**

8        The ALJ made the following findings and conclusions on the five steps: (1) for step one,

9   the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September

10  7, 2012; (2) for step two, the ALJ determined Plaintiff has obesity, diabetes mellitus, hypertension,

11  anxiety disorder, major depressive disorder and substance abuse disorder in remission, which are

12  classified as "severe" because they are "more than a slight abnormality or combination of

13  abnormalities that cause the claimant more than minimal functional limitations;" (3) for step three,

14  the ALJ determined that Plaintiff does not have an impairment or combination of impairments that

15  meets or medically equals the requirements of the Listing of Impairments; (4) for step four, the

16  ALJ determined that Plaintiff had the residual functional capacity to perform light work, except

17  that she is limited to performing simple, repetitive tasks characteristic of unskilled work; and (5)

18  for step five, the ALJ determined that Plaintiff is capable of performing past relevant work as a

19  flower packer, or alternatively, that other jobs exist in significant numbers in the national economy

20  that the claimant can also perform.

21        In her motion, Plaintiff argues: (1) the ALJ's application of Dr. Le's opinion was

22  improper; (2) the ALJ's hypothetical question to the vocational expert was incomplete; (3) the

23  ALJ's residual functional capacity assessment was inconsistent with other findings, (4) the ALJ's

24  decision on step four is not supported by substantial evidence, and (5) the ALJ's decision on step

25  five is not supported by substantial evidence. Overall, the court agrees with Plaintiff's arguments.

26

27

28  Case No.: 5:14-cv-04498-EJD
    ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**A.      The ALJ Accepted Most of Dr. Le's Functionality Opinion**

In the context of Social Security determinations, the weight prescribed to medical opinions depends in part on whether they are offered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician."  Id.  For this reason, an ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Id. at 831.  In addition, an ALJ can reject a treating physician's opinion in favor of other conflicting medical opinions so long as the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  Thomas, 278 F.3d at 956-57.

Here, Dr. McDevitt's testimony, to which the ALJ accorded the greatest weight, provides the framework for understanding how Dr. Le's testimony was considered.  Dr. McDevitt testified that Plaintiff has a history of chronic anxiety disorder with occasional episodes of panic disorder by history with no clear evidence of panic attacks.  Based on Dr. Acenas' report, Dr. McDevitt opined that Plaintiff has some marginal intellectual functioning.  And although he disagreed with Dr. Le's diagnoses of PTSD and OCD and disagreed that Plaintiff has a marked limitation in accepting instructions and responding appropriately to criticism from supervisors, Dr. McDevitt had no reason to object to the moderate limitations described in the Medical Source Statement. Thus, based on a review of the medical evidence, Dr. McDevitt concluded that Plaintiff could perform simple, repetitive work but would have difficulty with detailed instructions and with tasks requiring sustained concentration.

As to Dr. Le, the ALJ accorded great weight to the opinion that Plaintiff is mildly restricted in her activities of daily living, and moderately restricted in her social functioning and ability to maintain concentration, persistence and pace, because the opinion was consistent with Dr. McDevitt's testimony.  The ALJ also accorded great weight to another of Dr. Le's opinions - that Plaintiff has marked limitations in her ability to understand, remember and carry out detailed

8

1

instructions, as well as the opinion that Plaintiff has moderate restrictions in her ability to work in

2

proximity with others, to maintain a regular schedule and routine, and to interact with the public

3

and coworkers - but only "to the extent that it is consistent with the testimony" of Dr. McDevitt.

4

The ALJ rejected Dr. Le's opinion that Plaintiff has marked limitations in her ability to

5

accept the instructions of a supervisor based on Dr. McDevitt's testimony and "due to the lack of

6

support for this conclusion in the progress notes."  Similarly, the ALJ rejected Dr. Le's diagnoses

7

of PTSD, OCD and depressive disorder because they did not comport with Plaintiff's treatment

8

record.

9

Reconciling the evidence provided by both doctors, it is apparent the ALJ concurred with

10

the majority of Dr. Le's functionality opinion.  See Magallanes v. Bowen, 881 F.2d 747, 753 (9th

11

Cir. 1989) ("It is not necessary to agree with everything an expert witness says in order to hold

12

that his testimony contains 'substantial evidence.'"); see also Allums v. Colvin, 649 Fed. Appx.

13

420, 423 (9th Cir. 2016).  Indeed, by according it great weight to the extent it was consistent with

14

Dr. McDevitt's testimony - who stated he had no reason to object to the moderate limitations

15

described by Dr. Le in the Mental Medical Source Statement - the ALJ accepted the assessment

16

that Plaintiff had moderate limitations in several areas, including (1) social functioning and ability

17

to maintain concentration, persistence and pace, (2) the ability to work in proximity with others,

18

(3) the ability to maintain a regular schedule and routine, and (4) the ability to interact with the

19

public and coworkers.

20

Though the ALJ rejected a portion of Dr. Le's diagnosis and his description of Plaintiff's

21

ability to accept the instructions of a supervisor, the written decision contains specific, legitimate

22

reasons for doing so which are supported by substantial evidence.  Tonapetyan v. Halter, 242 F.3d

23

1144, 1149 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert

24

does not alone constitute a specific, legitimate reason for rejecting a treating or examining

25

physician's opinion, it may constitute substantial evidence when it is consistent with other

26

independent evidence in the record."); Thomas, 278 F.3d at 957 ("The ALJ need not accept the

27

28

Case No.: 5:14-cv-04498-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and

2    inadequately supported by clinical findings."); <u>Valentine v. Comm'r Social Sec. Admin.</u>, 574 F.3d

3    685, 693 (9th Cir. 2009) (affirming ALJ's decision to reject treating psychologist's opinion that

4    was inconsistent with treatment notes).  Importantly, however, the ALJ's decision provides no

5    reason for rejecting any of the moderate limitations ascribed by Dr. Le, particularly since Dr.

6    McDevitt did not object to those limitations.

7          **B.     The ALJ Failed to Account for Dr. Le's Functionality Opinion**

8          Having accepted Dr. Le's assessment of Plaintiff's moderate limitations, the ALJ was

9    required to incorporate those limitations into an RFC at step four of the sequential analysis.  20

10   C.F.R. § 404.1545.  RFC refers to what the claimant "can still do despite existing exertional and

11   nonexertional limitations."  <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  An ALJ

12   properly determines a claimant's RFC by "considering all relevant evidence in the record,

13   including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain,

14   that are reasonably attributed to a medically determinable impairment.'"  <u>Robbins</u>, 466 F.3d at

15   883.  "[A]n RFC that fails to take into account a claimant's limitations is defective."  <u>Valentine</u>,

16   574 F.3d at 690.

17         In addition, "the hypothetical an administrative law judge poses to a vocational expert,

18   which derives from the [RFC], must set out all the limitations and restrictions of the particular

19   claimant."  <u>Id</u>.  "[I]n meeting [the] burden of showing the claimant's ability to work, the

20   [Commissioner] may only rely upon the vocational expert's testimony if the questions posed by

21   the ALJ include all of the claimant's functional limitations, both physical and mental."  <u>Flores v.</u>

22   <u>Shalala</u>, 49 F.3d 562, 570 (9th Cir. 1995).

23         For Plaintiff's RFC, the ALJ stated in the written decision that she could perform light

24   work limited to performing "simple, repetitive tasks characteristic of unskilled work."  But at the

25   hearing, the ALJ asked Linvill the following hypothetical question at step four:

26                All right, Mr. Linvill, we have a hypothetical individual that I would
                  like for you to respond to, a hypothetical individual who has the

27

                                              10

28   Case No.: <u>5:14-cv-04498-EJD</u>
     ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1

2

3

4

5

6

7

> same age, education and work experience as our Claimant.  This hypothetical individual suffers from panic disorder with agoraphobia and diabetes type 2.  This individual is treated regularly with a - treats regularly with a doctor and a therapist and the doctor is versus the psychologist.
>
> This hypothetical individual is able to do work at the sedentary level.  Let's do light and sedentary so my first hypothetical deal with an individual at the light level.  And, mind you, the individual is - while anxiety is a disorder that she's being treated for, the medications treat and care - cover her anxiety.  So at the - at an RFC of light, can such an individual do the Claimant's past relevant work?"

8

Tr. at 66.

9

Linvill responded that Plaintiff could perform her past relevant work as a flower packer.

10

Id.

11

The ALJ then asked Linvill another hypothetical question at step five: "And at the RFC of

12

light, are there any other jobs in the local or national economy this individual would be able to

13

do?"  Id.  To that, Linvill responded that Plaintiff could perform jobs as a sales attendant,

14

housekeeper, and cashier with a light work limitation, and could perform as a document preparer,

15

inspector/hand packager, and cleaner/polisher with a sedentary limitation.  Id.

16

The RFC that the ALJ applied to Plaintiff at the hearing, and in turn the hypothetical

17

questions the ALJ posed to Linvill at steps four and five, were defective because they do not

18

completely account for the accepted mental limitations from Dr. Le's opinion.  In fact, neither of

19

the ALJ's hypotheticals included the mental limitation of "simple repetitive tasks characteristic of

20

unskilled work" that was subsequently included in the written decision.  Though the ALJ did

21

provide some disjointed detail about Plaintiff's psychiatric diagnosis within the step four

22

hypothetical, no reference was made to the actual limitations and restrictions manifested by those

23

conditions, such as moderate limitations in social functioning, ability to maintain concentration,

24

persistence and pace, ability to work in proximity with others, ability to maintain a regular

25

schedule and routine, and ability to interact with the public and coworkers.  Moreover, the manner

26

in which the ALJ described Plaintiff's psychiatric condition in the first hypothetical - as being

27

28

Case No.: 5:14-cv-04498-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1   treated regularly by a doctor and a therapist, and with medications that "cover" anxiety -

2   improperly suggested to Linville that no mental limitations were included in the RFC.

3         The seriousness of the defect in the hypothetical questions is only magnified by Linvill's

4   testimony on cross-examination.  When asked about Plaintiff's specific mental limitations by her

5   counsel, Linvill responded as follows:

6              With that RFC, and defining moderate as you've described it,
           primarily because of concentration, primarily because of work

7              schedule, primarily because of problems with - anticipated problems
           with co-workers at that level, I would say none of those jobs would

8              apply, nor would I be able to cite others that would.

9   Id. at 68.

10         Though it directly contradicted his prior testimony, the ALJ did not resolve or even address

11   the response to Plaintiff's counsel either at the hearing or in the written decision.  Instead, the ALJ

12   relied only on statements Linvill made in response to incomplete hypotheticals to find that

13   Plaintiff could perform her past relevant work as well as perform other jobs in the national

14   economy.  This was error.

15         The Commissioner's arguments against this conclusion are unpersuasive.  First, the

16   Commissioner relies on Stubbs-Danielson v. Astrue, 539 F.3d 1169 (9th Cir. 2008), and argues

17   that the "Ninth Circuit has held that a limitation to simple work adequately captures a doctor's

18   finding that a claimant has moderate limitations in an area of mental functioning such as

19   concentration, persistence, or pace."  This argument is unresponsive to the actual record, however,

20   because the ALJ did not recite a simple work limitation in the hypothetical questions posed to

21   Linville; instead, the ALJ only described a "light and sedentary" *physical* limitation. [3]  Stubbs-

22

23   _____

24   [3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of
objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this

25   category when it requires a good deal of walking or standing, or when it involves sitting most of
the time with some pushing and pulling of arm or leg controls.  To be considered capable of

26   performing a full or wide range of light work, you must have the ability to do substantially all of
these activities.  If someone can do light work, we determine that he or she can also do sedentary

27   work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for
long periods of time."  20 C.F.R. § 416.967(b).

28   Case No.: 5:14-cv-04498-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   Danielson, therefore, is inapposite.

2          Second, the Commissioner concedes the ALJ's omission of a simple work limitation in the

3   hypothetical questions but argues the error was harmless.  The court disagrees.  "In Social Security

4   cases, the U.S. Court of Appeals for the Ninth Circuit has only found harmless error when it was

5   clear from the record that an [ALJ's] error was inconsequential to an ultimate nondisability

6   determination."  Robbins, 466 F.3d at 885.  On this record, the ALJ's incomplete hypotheticals

7   cannot be considered "inconsequential" to the decision because, once confronted with Plaintiff's

8   mental limitations, Linvill stated that Plaintiff could not perform any work, let alone the jobs the

9   ALJ relied upon to find nondisability.  At the very least, the ALJ must clarify this inconsistency in

10  the evidence.

11         In sum, the ALJ's findings at steps four and five are not supported by substantial evidence

12  in the record.  For that reason, the ALJ's decision must be reversed.

**IV.   ORDER**

14         Based on the foregoing, Plaintiff's Motion for Summary Judgment (Dkt. No. 18) is

15  GRANTED and the Commissioner's Motion for Summary Judgment (Dkt. No. 21) is DENIED.

16         The Commissioner's final decision is REVERSED and this case is REMANDED for

17  further administrative proceedings consistent with this order.  Judgment will be entered in favor of

18  Plaintiff and the Clerk shall close this file.

19

20         **IT IS SO ORDERED.**

21  Dated:  March 28, 2017

22

23                                             EDWARD J. DAVILA
                                               United States District Judge

24

25

26

27                                             13

28  Case No.: 5:14-cv-04498-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California